



Cecilia Mangaoang
2901 Capewood Lane
San Jose, CA 95132-1108
(408) 876-9950

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

In re: Cecilia Mangaoang

        Debtor.

Case Number: 18-52245
Chapter: 13

Adv. Number: 18-05062
BAP Number: NC-18-1309

Date: (not set) _____/_____/2019
Time: (not set) _____
Court: Hon. M. Elaine Hammond

## VERIFIED MOTION FOR STAY PENDING APPEAL

### [ F.R.B.P. 8007 ]

Pursuant to F.R.B.P. 8007, Debtor moves for a stay, pending appeal of [31]

Order, of execution of the [31] Order denying Debtor's [24] "motion to extend

automatic stay." The effect of the [31] Order is to prematurely end the automatic

stay by finding that the presumption of § 362 (c)(3) is not overcome by Debtor's

evidence of income and expenses. This finding (and its consequence) should be put

on hold pending the appeal because the Court is in error, as discussed in the

Complaint in the Adversary Proceeding 18-05062. In the alternative, Debtor moves

to reinstate and extend the automatic stay. In the alternative, Debtor moves for an

1

injunction.

The [31] Order states: "Because the current case was filed within one year of the dismissal of the prior case, there is a presumption that the case was not filed in good faith under 11 U.S.C. § 362(c)(3)."

Debtor's attorney, Mr. Downing, should have re-opened the prior case (17-50208) instead of filing a new case. There would then be no presumption of bad faith.

Debtor's attorney, Mr. Downing, failed to apply for the Mortgage Modification Mediation (MMM) program after filing the instant case on October 4, 2018. Debtor qualifies for the MMM program. If the MMM program fails, then the mortgage payment to Wilmington and Newport (for the first mortgage and second mortgage) should have been included in the schedules, on a 60-month, not a 36-month plan. Debtor's income is adequate to cover that.

The [31] Order states: "While Debtor's income is more stable, her financial obligations have increased significantly due to the loss of a loan modification. As such, the stability of Debtor's income alone is not enough to overcome the presumption." However, the "loss of a loan modification" occurred in a different case, 17-50208. With proper procedure and adequate effort from the attorney, perhaps it could have gotten reinstated.

In addition, the issue of the above-mentioned "financial obligations" is on

appeal in BAP case NC-18-1309 and is also being litigated in the Adversary Proceeding 18-05062.

Debtor's attorney Mr. Downing failed to properly present the evidence of income and expenses, including expected increases. Had this been done properly, the [31] Order would have been decided differently. This issue is on appeal.

The factors of irreparable harm, public interest and balance of hardships tips toward Debtor. Debtor's husband Ferdinand is bedbound in a hospital bed in the house, needing 24 hour care including oxygen and tube feeding. The attached Exhibit A is a newspaper article dated December 18, 2018, and everything in the article is true. Cecilia Mangaoang was a nurse and is best qualified to take care of Ferdinand. If we are forced out of our home, Ferdinand would have to go back to a nursing home, where he would not thrive.

Debtor has a reasonable likelihood of success on the merits in both the Appeal and the Adversary Proceeding. Debtor qualified (and still qualifies) for the MMM program, however the attorney (Mr. Downing) did not apply and did not instruct Debtor. Further, the attorney never included both Newport Beach and Wilmington as creditors in the Chapter 13 Plans; one at a time, but never both. Newport Beach had the second mortgage and Wilmington had the first mortgage. The attorney never instructed me to make any Plan payments in the amount of $3,928.00 every month, and I never signed or agreed to do that. The attorney typed

3

my signature on Doc # 23 in 18-52245, page 7. The Trustee never made payments to either Wilmington or Newport Beach because Mr. Downing failed to include them in his Plans in case 17-50208. I made direct payments to SPS, not to the Trustee's office. No payments were made to Newport Beach.

As a consequence, Newport Beach assigned their interest to Trinity Financial LLC, and Trinity foreclosed on 11/5/2018.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct pursuant to 28 U.S.C. 1746.


Executed on: January 8, 2019


By: _Cecilia Mangaoang_
    Cecilia Mangaoang

4

## CERTIFICATE OF SERVICE

I hereby certify that on the date last written below I served a true and correct copy of the foregoing via ordinary first class mail postage prepaid to the following parties:

Office of the Clerk
U. S. Bankruptcy Court
280 South 1st Street, 3rd Floor
San Jose, CA 95113

Devin Derham-Burk, Trustee
P.O. Box 50013
San Jose, CA 95150-0013

U. S. Trustee' Office / SJ
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004

Burke, Williams & Sorenson, LLP
c/o Newport Beach Holdings, LLC
1851 East First St. #1550
Santa Ana, CA 92705-4067

Franchise Tax Board
Bankruptcy Section MS A340
PO Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101

Newport Beach Holdings, LLC
2618 San Miguel Drive, Suite 319
Newport Beach, CA 92660

Newport Beach Holdings, LLC
c/o Rafael Ramon Garcia Salgado
Burke, Williams and Sorenson, LLC
1851 E First St. #1550
Santa Ana, CA 92705-4067

5

TRINITY FINANCIAL SERVICES, LLC
c/o Richard J. Reynolds
Burke, Williams and Sorenson, LLC
1851 E First St. #1550
Santa Ana, CA 92705-4067

San Jose Water Company
25954 Eden Landing Road, First Floor
Hayward, CA 94541

SCC Tax Collector
6th Floor East Wing
70 West Hedding Street
San Jose, CA 95110-1767

Select Portfolio Servicing, Inc.
P.O. Box 65250
Salt Lake City UT 84165-0250

Robert P. Zahradka
Tiffany & Bosco, P.A.
1230 Columbia Street, Ste 680
San Diego, CA 92101

Wilmington Trust, NA 2007-AR3
c/o Tiffany & Bosco, P.A.
1230 Columbia Street, Suite 680
San Diego, CA 92101

Wilmington Trust, NA, successor trustee to
Citibank, N.A. as trustee
Select Portfolio Servicing Inc
PO Box 65250
Salt Lake City UT 84165-0250

Executed:  January 8, 2019.

/s/ _____

      Armida Mangaoang
      2901 Capewood Lane
      San Jose, CA 95132

6

# EXHIBIT   A





# The Mercury News

TUESDAY, DECEMBER 18, 2018

## HOUSING GOALS

## wishbook:2018

# 'It's better here than at the nursing home'

### Silicon Valley Independent Living Center helps ease the financial burden for those with disabilities who want to stay in their homes



PHOTOS BY DAI SUGANO — STAFF PHOTOGRAPHER

In their San Jose home recently, Maria Isabel Oblea, 19, hugs her grandfather, Ferdinand Mangaoang, 62, who suffered a severe stroke in 2016. With help from a nonprofit, he was able to move from a skilled nursing facility back into his home.

## WISH BOOK: THE SERIES

The Wish Book is an annual series of The Mercury News that invites readers to help their neighbors.

**WISH** Donations will help Silicon Valley Independent Living Center provide home accessibility and safety modifications so that people with disabilities can remain in their homes. Goal: $25,000

**HOW TO GIVE** Donate at wishbook. mercurynews.com or mail in the coupon on Page A5.

**ONLINE** Read other Wish Book stories, view photos and video at wishbook.mercury news.com

### By John Woolfolk
jwoolfolk@
bayareanewsgroup.com

Ferdinand Mangaoang was enjoying retirement after a long career as a craftsman, indulging his passion for cooking and spending time with his wife, children and grandkids. He had a scare three years ago with a mild stroke that slowed his gait, but he seemed to otherwise recover.

But on June 10, 2016, disaster struck. His wife, Cecilia, found him snoring and drooling in the morning, unable to get up. Their son and daughter-in-law gave him CPR, but medics gave him grave odds as they whisked him to the hospital.

Ferdinand, 62, survived the second stroke. But this time the damage was profound, and his prospect for returning home was daunting. Af-



"We really appreciate that they put Ferdinand back in his home so we can take care of him."

— Cecilia Mangaoang, Ferdinand's wife

ter two weeks in a coma, he was sent to nursing homes, where he remained bedridden, reliant on breathing and feeding tubes.

ily got a break when the Silicon Valley Independent Living Center worked with them to modify their San Jose home to accommodate Ferdinand's

## Getting 'people off the streets'

### County Board of Supervisors to vote today on funding construction of 1,000 affordable rental homes

#### By Marisa Kendall
mkendall@bayareanewsgroup.com

More than 1,000 new and rehabbed affordable homes could be coming to Santa Clara County, the latest projects to spring from a massive 2016 housing bond and a milestone that advocates say will help the region's poorest residents.

The Santa Clara County Board of Supervisors is expected today to approve funding for construction of six new affordable rental projects and the rehabilitation of three existing buildings, using money from the $950 million housing bond that county voters narrowly passed two years ago. If the latest units are approved, the Measure A bond will have funded 19 projects over the past year and a half, putting the county ahead of schedule in allocating the money and meeting its housing goals.

"That's going to get people off the streets," said Ky Le, director of Santa Clara County's Office of Supportive Housing, "and provide them the stability they need in order to address their health issues, in order to address their employment and vocational needs."

After the state dissolved redevelopment agencies in 2012, drying up what had previously been a major source of funding for low-income housing, many local cities and counties asked voters to replenish their coffers by approving new bonds and taxes.

In Alameda County, voters in 2016 approved Measure A1, authorizing $580 million in bonds for affordable housing. So far, $81 million of that money has gone toward building 1,100 affordable homes, said Wilma Chan, president of the Alameda County Board of Supervisors. San Mateo County voters in 2016 approved extending a

#### MEASURE A

In 2012, the state did away with redevelopment agencies, which had been a major source of funding for low-income housing. Cities and counties looked to voters to approve new sources. Measure A was a $950 million bond that passed only by a narrow margin.

MEASURE A1, » PAGE 8



After coming home from school, Michael Mangaoang, 11, talks to his grandfather, Ferdinand Mangaoang, 62, who suffered a severe stroke in June 2015. The Silicon Valley Independent Living Center provided funds and helped the family modify their San Jose home to accommodate Ferdinand's disabilities.

DAI SUGANO — STAFF PHOTOGRAPHER

# Home

FROM PAGE 1

disabilities and allow him to return home under the care of his family rather than in a skilled nursing facility.

"We really appreciate that they put Ferdinand back in his home so we can take care of him," said Cecilia, who like daughter-in-law Arnilda had worked as a nurse in the Philippines. "It's better here than at the nursing home. At least here at home, we can take care of him."

The center is requesting $25,000 from Wish Book, which Executive Director Sheri Burns said is enough to help about 15 people in nursing facilities move back home.

Since 1976, the nonprofit center has been trying to ease the financial burden for Santa Clara County residents with disabilities who want to remain in their homes. It is among 28 such Independent Living Centers in California and more than 400 nationwide.

Since 2011, the Silicon Valley Independent Living Center has helped more than 200 disabled people such as Ferdinand live at home. They range in age from 18 to over 100, Burns said. Typically, the cost is a few thousand dollars to install things such as hand rails, grab bars and ramps around the recipient's home.

Ferdinand's case posed more of a challenge. The organization provided $7,000 worth of home improvements for him — wheelchair ramps, hallway widening, sturdier flooring for a living room converted to his bedroom, a roomier refrigerator, high-powered vacuum and an air conditioner.

Though the stroke has greatly limited Ferdinand's ability to communicate, his family knows his subtle gestures — movements of his hands, eyebrows — that express his feelings. And Armida said her father-in-law is much happier since returning home.

At the nursing home, Armida said, he seemed checked out. When they told him he was coming home, she said, he gestured his excitement with his eyebrows and hands. His room is painted a cheerful tangerine color, with a picture of his grandchildren on his wall. He enjoys watching detective shows on TV, she said.

Burns said the program provides a more efficient and personal level of care for people who couldn't otherwise afford the improvements needed to live at home.

"We see people as having inherent dignity," Burns said. "The whole idea of people being warehoused is antithetical to that. If they have the desire, we do what we can to help people move back home."

Each client is supported by a transition coordinator from the agency who helps the family work through all the medical, legal and financial bottlenecks and creates a personal plan.

Those facilitators regularly visit nursing homes looking for clients who could benefit from the program and provide follow-up assistance after the client returns home.

In Ferdinand's case, his son Robinson struck up a conversation with living center transition coordinator Tita Das at the nursing home where he was being housed.

"We needed a lot of home modifications," Das said. "I had medical advice on what could be done."

Though it was more ex-

pensive than the agency's typical cases, the family's eagerness to provide the high level of care Ferdinand would require and the fact that his wife and daughter-in-law had some medical training — made his case compelling, Das said.

"She understands exactly what her husband's level of comfort is," Das said.

Current federal aid programs, Burns said, allow funding that otherwise would go toward monthly nursing home expenses to be spent on one-time improvements that allow the recipient to return home. But that program, begun in 2010, is set to expire at the end of this year unless Congress reauthorizes it.

Burns can't understand why lawmakers would discontinue something that replaces a monthly $8,000 expense with a one-time $6,000 cost to return home.

"I cannot believe Ferdinand is home already," Cecilia said, looking at her husband. "They are really helping us. I want them to continue the program so that they can help more people."

Contact John Woolfolk at 408-920-5782.

## wishbook2018 | The Mercury News

To donate online visit: wishbook.mercurynews.com

Name (Please print)

Address

City, state and ZIP code

Daytime phone (    )

Email address

### WISH TO BE FULFILLED

☐ Specific wish _____ $ _____
Person or group in need

☐ Specific wish _____ $ _____
Person or group in need

☐ General donation _____ $ _____

Total (tax deductible) $ _____

### PAYMENT

☐ Check (Make checks payable to Wish Book Fund)

☐ Visa   ☐ MasterCard   ☐ Discover   ☐ Amex

Credit card number: _____ CVC: _____

Signature: _____ Exp.: _____

Mail donation to: The Mercury News Wish Book Fund
4 North 2nd Street, Suite 800
San Jose, CA 95113

Contributions: Tax-deductible donations of any amount are welcome. Wish Book also accepts donations of appreciated stock; please email wishbook@bayareanewsgroup.com if you are interested in donating stock. If donations exceed the amount required to fulfill a certain wish, excess funds will be used to fulfill other wishes. Tax ID: 77-0296635

### SHOWING OUR GRATITUDE

☐ Yes ☐ No   Would you like your name to be included in a donor list published in The Mercury News and on wishbook.mercurynews.com? (If no boxes are checked your name will be published)

☐ Include a dedication to a person, cause or group